ALASKA PACKERS' ASS'N v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit.   August 20, 1917.)

No. 2927.

1. WORDS AND PHRASES—"WANTON."
    The term "wanton" includes all willful acts or conduct which is reck-
less of the consequences that may ensue therefrom.
    [Ed. Note.—For other definitions, see Words and Phrases, First and
Second Series, Wanton.]
2. INDICTMENT AND INFORMATION ⬤═176—WANTON DESTRUCTION OF FISH—
PROOF.
    Under an indictment under Comp. Laws Territory Alaska 1913, § 266,
alleging that on July 30, 1913, defendant unlawfully and wantonly wasted
and destroyed salmon taken in the waters of Alaska, the prosecution
was not bound to prove the commission of the offense on that day.
3. CRIMINAL LAW ⬤═678(3)—ELECTION BETWEEN ACTS.
    Under such indictment the fact that the prosecution introduced evi-
dence tending to show that defendant committed the alleged offense of
July 26th did not show that the government or the law elected that day
as the particular day on which the alleged offense must be proved to have
been committed.
4. FISH ⬤═15—TIME OF OFFENSE—VARIANCE.
    In a prosecution under Comp. Laws Territory Alaska 1913, § 266, for
wantonly wasting and destroying salmon taken in the waters of Alaska,
alleging the offense to have been committed on July 30, 1913, where
the court required the prosecution to elect to prove the offense as of July
28th, and admitted evidence of defendant's acts on other days to prove
the offense charged, a conviction will not be reversed because of a vari-
ance between the date so elected and that named in the indictment.
5. CRIMINAL LAW ⬤═678(4)—WANTON DESTRUCTION OF FISH—EVIDENCE—
PRIOR AND SUBSEQUENT ACTS.
    Where the court required the prosecution to elect July 28th as the day
on which it would claim that the offense was committed, the admission of
evidence as to the number of fish taken by defendant's fishermen on July
25th, 26th, and 27th, and defendant's failure to take them away, and
the necessary dumping of the fish, and of evidence of the taking of fish on
subsequent days extending to a day after July 30, 1913, and of defendant's
failure to take them away, in consequence of which they were wasted and
destroyed, not to establish a series of distinct crimes, but as bearing on
defendant's guilt on July 28th, was not error.

    In Error to the District Court of the United States for the Third
Division of the Territory of Alaska;   Fred M. Brown, Judge.
    The Alaska Packers' Association was convicted of wantonly wast-
ing or destroying salmon taken in the waters of Alaska, contrary to
section 266 of the Compiled Laws of the Territory of Alaska, and it
brings error.   Affirmed.
    Donohoe & Dimond, of Valdez, Alaska, and Warren Gregory, Allen
L. Chickering, George H. Whipple, Evan Williams, and Donald Y.
Lamont, all of San Francisco, Cal., for plaintiff in error.
    William N. Spence, U. S. Atty., and William A. Munly, Asst. U. S.
Atty., both of Valdez, Alaska.
    Before GILBERT, ROSS, and HUNT, Circuit Judges.

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ROSS, Circuit Judge.  Section 266 of the Compiled Laws of the territory of Alaska provides:

"That it shall be unlawful for any person, company, or corporation wantonly to waste or destroy salmon or other food fishes taken or caught in any of the waters of Alaska."

The preceding section (265) is as follows:

"It shall be unlawful to can or salt for sale for food any salmon more than forty-eight hours after it has been killed."

The plaintiff in error was indicted in the court below for a violation of the first-mentioned section, the indictment alleging that, on the 30th day of July, 1913:

It "unlawfully and wantonly did waste and destroy a large number of salmon, which salmon then and there had been taken and caught in the waters of Alaska, to wit, at a point in the waters of Cook Inlet near the western shore of said Inlet between the mouth of the Kustatan river and the West Foreland in said territory and division, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America."

The jury returned a verdict of guilty as charged in the indictment, upon which verdict judgment against the plaintiff in error was entered.

The specifications of error relied upon in the brief of the plaintiff in error are, in substance, that the trial court erred in denying its motion made at the time of the introduction of the first evidence tending to establish the charge, that the plaintiff then elect a date on which it should attempt to prove the commission of the alleged offense; that the court erred in overruling the defendant's objections to evidence tending to establish the crime alleged on any date other than July 28, 1913, evidence introduced on the part of the government having tended to show the commission of the offense by the defendant on that day; that the court erred in requiring the government, on the close of its evidence, to elect a date as the date on which the alleged crime was committed, for the reason that the 26th day of July, 1913, "had been elected by law as such date, as the 26th day of July, 1913, was the day the witnesses for the plaintiff testified to be the first day on which a large number of salmon were claimed to have been unlawfully and wantonly wasted and destroyed"; and that the court erred in permitting the government, over the defendant's objections, "to elect as the date of the commission of such alleged crime the 28th day of July, 1913, for the reasons stated in the last-preceding assignment of error."

[1] As has been seen, the act made criminal by the statute is to "wantonly" waste or destroy salmon or other food fishes taken or caught in any of the waters of Alaska.  The term "wanton" includes all willful acts or conduct which is reckless of the consequences that may ensue therefrom.  Strough v. Central R. Co. of New Jersey, 209 Fed. 23, 26, 126 C. C. A. 165;  Hazle v. Southern Pacific Co. (C. C.) 173 Fed. 431.

[2, 3] We do not understand it to be contended—certainly it cannot be successfully contended—that the prosecution was bound to prove the commission of the offense on the precise day alleged in the indict-

ment, which was July 30, 1913, nor can it be properly held as matter of law that because the prosecution introduced evidence tending to show that the defendant committed the alleged offense on the 26th of the same month—four days before the day alleged in the indictment—that either the government or the law "elected" that day as the particular day on which the alleged offense must be proved to have been committed. Manifestly the mere waste or destruction of salmon or other fish on the 26th day of July, or on one or more other succeeding days, might have been far from satisfying the jury that such waste or destruction was wanton.

[4, 5] It appears from the record that testimony was introduced tending to show that at the beginning of the fishing season of 1913 the plaintiff in error contracted with two fishermen, named March and Hunter, for the catching of fish for the appellant's cannery, furnishing them with the necessary boats and fishing tackle, and that pursuant to the arrangement the fishermen built their trap, and that during the run of the king salmon, large numbers of which the fishermen caught, the plaintiff in error sent its boat from time to time to receive them; that after the run of the king salmon was over that of the red salmon commenced on the 24th of July, on which day the fishermen caught 2,500, the same number on the next day, and on the 26th of July about 1,000. The witness March having given testimony tending to show that Hunter went on the 25th of July to notify the plaintiff in error to take the fish, and that its boat did not call for them, was asked what was done with the fish that they had taken on the 24th and 25th of July, to which question objection was made on behalf of the plaintiff in error on the ground of incompetency, irrelevancy, and immateriality, including an objection "to the introduction of any testimony whatever tending to show or establish that salmon were wasted or destroyed at the place named in the indictment on any other date than the date alleged in the indictment, which was the 30th day of July, unless the government at this time elects to announce the date on which they propose to hold" the defendant under the indictment, and on the further ground that no evidence was admissible "tending to establish collateral crimes for the purpose of establishing the crime alleged." The objections were overruled, and exceptions reserved to the ruling, and the witness allowed to state the number of fish taken out by the fishermen on the 25th, 26th, and 27th of July, the failure of the appellant to take them away, the necessary dumping of all the fish taken out by the fishermen prior to the 27th, the coming of the cannery boat of the plaintiff in error on July 28th, at which time the fishermen had 2,000 fresh fish in the scow that had been furnished them by the plaintiff in error. Being asked what was done with those, objection was made on behalf of the plaintiff in error to the effect that no evidence was admissible "of a crime subsequent to the date either alleged in the indictment or fixed by the evidence," in response to which the court said:

"Testimony will be introduced showing the entire operation of this trap as tending to throw light on the charge in this case that on a certain day they were wasted, showing the methods used and the calling of defendant's boat or their not calling as the case may be, and showing the entire circumstances so it can be ascertained whether they did use reasonable diligence and

care in the protection of these fish, or whether they wantonly and recklessly wasted and permitted them to be destroyed—that is the question here."

And in pursuance of that ruling the prosecution was permitted to give testimony of the catching by the fishermen on various subsequent days extending to a date subsequent to July 30, 1913, of various numbers of fish, of the failure of the plaintiff in error to take them away, and the consequent necessary wasting and destroying of them, not, as the court clearly explained during the taking of the testimony and also to the jury in its instructions, for the purpose of establishing a series of distinct crimes, but only as bearing upon the question as to whether or not the plaintiff in error was guilty of wantonly wasting or destroying the fish on the 28th day of July, 1913, being the day (under the direction of the court) elected by the government's attorney upon the conclusion of its evidence as the day it would claim the crime charged was committed.

Since the indictment charged but the one crime, and since the prosecution was not limited to the precise date named in the indictment, and since the trial court ruled, and instructed the jury, in effect, that the evidence of the transactions on the days other than July 28th was admitted and should be considered solely as bearing on the question as to whether or not the fish were wantonly wasted or destroyed, we are unable to see any sound reason why the judgment should be reversed because of the variance between the date elected by the government's attorney and that named in the indictment and in the verdict of the jury.

The counsel for the plaintiff in error rely upon the case of People v. Flaherty, 162 N. Y. 532, 57 N. E. 73, as being identical in principle with the present one. But we think the case very different. There the defendant had been indicted for the crime of sexual intercourse with a female not his wife, under the age of 16 years, the indictment charging but one offense. The complaining witness testified that the defendant had had sexual intercourse with her on seven different occasions prior to her becoming of the age of 16 years, and at the outset of the trial counsel for the defendant moved that the prosecuting attorney be forced to elect upon which of the seven offenses he would demand a verdict of guilty. The motion was denied, and evidence given in respect to the commission of the offense on the seven different occasions, and it was not until the close of the case of the state that the prosecution made an election. On appeal the court held that the failure of the trial court to force the prosecution to elect at the outset of the trial was error, and accordingly reversed the judgment. The seven different offenses there were seven distinct crimes, whereas in the present case the mere wasting or destruction of fish on either of the occasions inquired about did not constitute a crime unless wantonly committed, and the facts relating to the various occurrences in the present case were admitted for the sole purpose of enabling the jury to correctly determine that question, as the court distinctly instructed them.

The subsequent decision of the Court of Appeals of New York in People v. Thompson, 212 N. Y. 249, 106 N. E. 78, L. R. A. 1915D,

236, Ann. Cas. 1915D, 162, in which the indictment was based on an alleged violation of the penal law of the state which reads as follows:

"A person who perpetrates an act of sexual intercourse with a ·female, not his wife, under the age of eighteen years, under circumstances not amounting to rape in the first degree, is guilty of rape in the second degree, and punishable with imprisonment for not more than ten years"

—states the case as follows:

"The female involved gave testimony, under her direct examination as a witness for the prosecution, in proof that the offense charged in the indictment was committed, and additionally, under the overruled objection and exception of the defendant, that subsequent to the commission of it the defendant had sexual intercourse with her four or five times.' Because of the reception of this evidence the Appellate Division, as appears from the memorandum opinion there pronounced, reversed the conviction, holding that 'the court erred in admitting testimony as to subsequent offenses by the defendant upon the person of the female involved,' and granted a new trial. We do not agree with the Appellate Division in the view thus taken."

After thus stating the case and its conclusion, the court said:

"It is a general rule that it is error to receive evidence as proof of the offense charged that an accused has committed a criminal offense other than that charged in the indictment. Evidence which tends only to prove collateral facts and has not a natural tendency to establish the fact in controversy should be excluded because: (a) It would have a tendency to withdraw and mislead the attention and deliberation of the jury from the real issue under inquiry; and (b) would subject the accused to charges unconnected with that issue and against which he had no reason to prepare a defense (citing cases). This rule has, however, exceptions in those cases in which the evidence offered has a natural tendency to corroborate or supplement admitted direct evidence (citing cases). And the doctrine is now well, if not universally, established that in prosecutions for adultery, seduction, statutory rape upon one under the age of consent, and incest, acts of sexual intercourse between the parties prior to the offense charged in the indictment may be given in evidence."

And the court there referred to its previous decision in People v. Flaherty, so much relied upon by the plaintiff in error here, in these words:

"It is weightless as to the question under consideration. The error found in it was that the defendant throughout the seven days of the trial was unable to ascertain which of seven offenses testified to by the complainant he was indicted and to be tried for."

In the matter of Election of Counts, it is said in Bishop's New Criminal Procedure, vol. 1 (2d Ed.) § 460, that:

"Where the doings on different days may be regarded as parts of the one transaction, the combined acts on all the days may be shown, and there will be no cause for election"

—citing cases, and, regarding the time to elect, he alludes to the conflict in the decisions upon the subject, and, in conclusion, says in section 462:

"The doctrine of this chapter is less distinct in the books than one could wish; partly because it is difficult to reduce discretion to rule, and partly because judicial opinions on such a subject cannot, in the nature of things, be in complete harmony. It is believed that in most cases justice is best promoted where the judge permits the witnesses to go far enough to identify a transaction before compelling the election. What is chiefly to be avoided,

while the evidence for the state is being introduced, is to prevent the defendant being prejudiced with the jury by testimony indicating crimes for which he is not indicted, and to which he is not to answer. But whatever is done at the early stages of the trial, plainly, as a general rule, the election should be required before the prisoner opens his defense."

The judgment is affirmed.